JOHN W. KING, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Appeal: ASSIGNMENT OF ERRORS: RAILROADS: KILLING STOCK: EVIDENCE.

*Appeal from Davis District Court.*—HON. CHARLES D. LEGGETT, Judge.

MONDAY, JANUARY 23, 1893.

ACTION to recover double the value of two animals claimed to have been killed by the defendant's trains. There was a verdict and judgment for the plaintiff from which the defendant appeals.—*Reversed.*

*S. S. Carruthers* and *Thomas S. Wright,* for appellant.

*Payne & Eichelberger,* for appellee. .

KINNE, J.—The plaintiff claims that his colt, while running at large, was, on March 23, 1890, struck and killed by the defendant's train at a place where it had a right to fence, and had not done so; that on December 7, 1889, the defendant's train struck and killed a cow belonging to him; that she was also running at large, and was struck and killed at a point where the defendant had a right to fence, but had failed so to do. The necessary notice in each case on which to base a claim for double damages was served. The colt was alleged to be worth sixty dollars and the cow twenty-five dollars. The answer is a general denial.

I. It is said that the assignment of errors is too general, and should be disregarded. This objection presents substantially the same question as was decided in *Kitterman v. Chicago, M. & St. P. Railway Co.,* 69 Iowa, 442, where it was held such an assignment was sufficient. See, also, *Waller v. Waller,* 76 Iowa, 517.

II. The only other question arising upon this record is as to the sufficiency of the evidence to sustain the verdict. The plaintiff insists that the animals when struck were on the railroad right of way, while the defendant insists that they were struck on a crossing of a public highway. As to the cow in controversy, the undisputed facts are: She was owned by the plaintiff. She was in the highway near his residence the night before she was killed. She was found dead the morning of December 8, 1889, on the defendant's right of way, at a point from four to eight feet west of the highway fence, which runs north and south across the railway. She was lying on the north side of the track, and about four feet from it. Her hind quarters were towards the track, and her head to the north. The bottom board of the highway fence at the north side of the track, and which connected with the cattle guard, had been freshly

broken. One end of the board was still attached to the fence. The broken board was eight feet long. It was about two or three feet from the bottom of the ditch on the north side of the track to the bottom of the board that was broken, and the board was six inches wide. The dead cow was pulled around into the ditch, and through the place where the board had been broken. At the time the cow was killed, and for several weeks prior thereto, the wire fence on the south line of the railroad right of way, and about forty feet southwest from where the cow lay, was in a defective condition. The wires were loose, and had dropped down, so an animal could have passed through the gap. There were cattle tracks from this gap, inside of the right of way, leading up towards the railroad track, but they ceased some ten feet from the track. There were cow tracks on the highway crossing. Cow tracks were also seen not more than ten feet from the broken board, on the north side of the track. They were on the embankment, near the north and south fence. There was no hair or blood on the broken board. There were no visible marks of injury on the cow. Most of the witnesses testify that the board appeared to have been broken by a force from the west; others thought the force came from the east. The defendant's engineer testified that on the morning of December 8, 1889, he was running a passenger train over its road, going west, and on the crossing referred to the engine struck a cow, and knocked her west of north; that he did not see her go through the fence, but heard the boards crack; that the train was running from thirty to thirty-five miles an hour.

It appears clearly that the cow could have entered the gap in the wire fence; that in fact tracks led from that gap towards and to within a few feet of the track; that they appeared to be fresh tracks. It seems to be conceded that the cow was killed by a train of the defendant, and we think, from all the evidence, the jury were justified in finding that she was struck while on the defendant's right of way, not on the highway crossing. While it may be possible, yet it seems to us highly improbable, that this cow could have been thrown through this cattle guard fence, breaking only one board. There is no evidence to show that this board was not broken prior to the night in controversy except the fact of the fresh appearance of the break. It is true that the fact that the engineer who testified was in the employ of the railroad company should not discredit him as a witness, and, while the jury would not be justified in arbitrarily rejecting his positive testimony as of no weight on that account, yet, for aught that appears, there may have been other reasons which were proper and sufficient which led them to place little reliance on his evidence. His appearance and demeanor on the stand are matters which can not be portrayed in print, and where, as in this case, so far as this cow is concerned, the evidence is ample to justify the verdict, we can not say that it should be set aside, even if it be conceded to be in conflict with his positive testimony. *Cox v. Burlington & W. Railway Co.*, 77 Iowa, 481.

III. As to the colt in controversy, the undisputed facts are that the plaintiff owned the colt; that it was killed by the defendant's engine on

March 29, 1890; that about dusk the night before it was at the plaintiff's home, with its mother, about an eighth of a mile from the railroad; that the plaintiff's residence was a mile and a quarter from the place where it is claimed the colt got onto the defendant's right of way; that it was not over one-fourth of a mile from where the colt was at the plaintiff's to the highway crossing over the defendant's road. After going north from the plaintiff's house over the railroad, the highway runs east along the north side of the railroad. In this fence, and about three-fourths of a mile northeast of the plaintiff's home there is a gate, which, it appears, had for some time been in such a condition as to allow stock to pass through it onto the railroad right of way. One-fourth of a mile east of this gate the colt was found dead on the right of way. The morning when the colt was found dead the mother was in the yard at the plaintiff's house. The colt was ten months old. For a distance of about fifty feet west of where the colt was killed, and up to the place where it lay, there were marks between the rails that "looked like something had been struggling there." Blood was also found along the ties, and a portion of the colt's entrails at the place where it looked as though it (the colt) had been dragged to the east. The testimony of the engineer was to the effect that on the night of March 29, 1890, he was running an engine on the defendant's road; that his engine struck a horse or colt on the highway crossing north of the plaintiff's home, and carried it about one and one-half miles east; that the train was running about fifty miles an hour, and the colt was thrown up on the pilot. It seems to us that there is not necessarily any conflict in the evidence touching the killing of this colt. The plaintiff claims the colt got on the right of way through the gate heretofore mentioned, but there is no evidence whatever to show such fact, unless the finding of the colt's entrails on the track, and the further fact that the colt was found dead east of the gate, should be so considered. It is incumbent upon the plaintiff to show that the colt was struck on the defendant's right of way. There is no evidence of tracks from the gate towards the point where plaintiff claims the colt was struck. There is nothing to indicate that this colt ever passed through said gate. No one testifies as to having seen the colt, while alive, nearer this gate than at the plaintiff's home a distance of over a mile and a half from where it was found. The colt was only ten months old, was running with its mother, and the mother was home on the morning the colt was found. That the colt was thrown on the pilot at the crossing and carried to the point where it was found, is not improbable when we consider that the distance would be covered in about a minute and a half at the rate the train was running. In any event, the plaintiff has not shown such facts as warranted the jury in finding for him as to the colt. It is not shown by footprints, or by hair on the gate, or in any other way, that the animal came through that gate onto the defendant's right of way and was there struck by its engine. Hence it occurs to us that, so far as this colt is concerned, it is not a case of conflict in the evidence where we should be slow to disturb the verdict, but a case unsupported by evidence of facts essential to a recovery. If

the evidence in this case will sustain the defendant's theory as fully as it will the plaintiff's, then clearly plaintiff must fail.

If the plaintiff shall within sixty days file a *remittitur* in this court of one hundred and ten dollars, being the proportion of the verdict allowed for the colt, the judgment below will be affirmed; otherwise it will be REVERSED.